# United States Court of Appeals
## For the First Circuit

No. 01-2353

PAUL GUNTER,

Petitioner, Appellee,

v.

MICHAEL T. MALONEY,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, <u>U.S. District Judge</u>]

Before

Lynch, <u>Circuit Judge</u>,
and Bownes and Magill,[*] <u>Senior Circuit Judges</u>.

<u>James M. Doyle</u> with whom <u>Carney & Bassil</u> was on brief for appellee.

<u>William J. Meade</u>, Assistant Attorney General, with whom <u>Thomas F. Reilly</u>, Attorney General, was on brief for appellant.

April 29, 2002

---

[*]    Of the Eighth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.  Paul Gunter, convicted in 1996 of felony murder and other charges in Massachusetts and sentenced to life imprisonment, was granted a writ of habeas corpus by the federal district court on August 23, 2001.  We reverse, vacate the writ, and dismiss the petition.

I.

The facts underlying Gunter's conviction are set out in detail in the opinion of the Massachusetts Supreme Judicial Court (SJC).  Commonwealth v. Gunter, 427 Mass. 259, 692 N.E.2d 515, 518-19 (1998).  The factual findings of the state court are presumed to be correct under 28 U.S.C. § 2254(e)(1).  See Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001).  We describe the facts briefly.

Gunter was part of a group that sold illegal drugs from a Boston apartment.  On March 21, 1991, three men stole drugs from the apartment.  Gunter and three of his associates in crime -- Corey "Floyd" Selby, Mark Edwards, and Larricia McConnico -- drove to another apartment where they, incorrectly, thought the thieves might be.  Gunter waited outside in the car and knew his confreres intended to kill or hurt the thieves.  Gunter's three colleagues entered the apartment and held at gunpoint the four innocent people inside -- Anthony Madden, Annette Gilbert, Gwendolyn McKenzie, and Jack Berry Jr. -- while Gunter waited in the car.  Before they left the apartment, Selby shot and killed Berry.  Thus Madden, Gilbert, and McKenzie were bystanders to the murder of Berry.  Selby,

Edwards, and McConnico then ran back to the car and, with Gunter, drove away from the murder scene.

Gunter was convicted as a joint venturer of murder in the first degree on a felony murder theory. The underlying felony charged in the indictment was assault with a dangerous weapon in a dwelling house. Mass. Gen. Laws ch. 265, § 18A. The prosecution theory, proven at trial, was that Berry had been assaulted and that assault was the felony to support the felony murder. When the case was on appeal to the SJC, that court on its own raised the issue of

> [w]hether, in light of the defendant's conviction as a joint venturer of murder in the first degree on a theory of felony-murder, where the underlying felony was armed assault in a dwelling with intent to commit a felony the felony is sufficiently 'independent' of the murder itself to justify the first degree murder conviction,

or whether it had merged with the killing. Gunter, 692 N.E.2d at 524 (citation omitted). Because Gunter did not raise this merger doctrine issue himself at trial or on appeal, the issue was procedurally defaulted, and the SJC subjected it to discretionary miscarriage of justice review only, as it is empowered to do under Mass. Gen. Laws ch. 278, § 33E. The SJC asked for briefing on the issue. Only then did petitioner make the merger doctrine argument, which the SJC had raised on its own, and argue that letting the felony murder conviction stand would deprive him of his rights to a fair trial and due process as guaranteed by the United States Constitution.

On that miscarriage of justice review, the SJC decided that under the merger doctrine, the theory of the prosecution,

-3-

which used the assault on Berry as the underlying felony, was unsound because the underlying felony of assault on Berry merged with the killing of Berry. Nonetheless the SJC did not reverse because it found Gunter, on the evidence at trial, was properly convicted under a different felony murder theory, although the alternate theory was not the theory that the prosecution actually used at trial. The alternate theory was that the felony of assault on the bystanders was the underlying felony to support the felony murder conviction. The SJC reasoned that based on the "ample evidence presented by the Commonwealth," the jury could have found Gunter guilty beyond a reasonable doubt of the independent assaults committed on Gilbert, Madden, and McKenzie, thus providing the felony to underlie the felony murder conviction. Id. at 526-27. The SJC acknowledged that the assaults on the bystanders were not specified in the indictment, but found that fact irrelevant because "the statutory form of indictment is sufficient to charge murder by whatever means it may have been committed, including felony-murder." Id. at 526. The SJC "conclude[d] that there was no substantial likelihood of a miscarriage of justice in the conviction of Gunter as a joint venturer." Id. at 527. Accordingly, the SJC allowed Gunter's murder conviction to stand, although it did vacate his conviction for armed assault in a dwelling place as merged into the murder conviction.

On April 28, 1998, Gunter petitioned the SJC for rehearing under Mass. R. App. P. 27. He based this petition in part on a newly made ineffective assistance of counsel claim,

arguing that trial counsel should have requested a specific jury instruction "to ensure that the jury's verdict was unanimous as to which specific acts constituted the underlying assaults." He also argued that because the underlying felony charged in the indictment could not serve as an underlying felony in a felony murder conviction, his conviction denied him due process of law. The SJC, in its discretion, denied the petition for rehearing on May 22, 1998, without opinion. Gunter never filed a motion for new trial, the usual vehicle to raise an ineffective assistance claim.

Gunter's petition for a writ of habeas corpus, under 28 U.S.C. § 2254, was filed pro se, and consisted of twelve separate grounds. Ground eleven stated that his attorney's "failure to argue that the felony murder doctrine, as applied to the facts of this case, violated petitioner's federal constitutional rights and amounted to ineffective assistance of counsel." The district court initially dismissed the ineffective assistance claim because of Gunter's failure to exhaust state remedies, but then reversed itself, accepting appointed counsel's argument that the ground had fairly been presented to the state court in the petition for rehearing. The district court granted the writ based on this ground. Gunter v. Maloney, No. 99-11125-RWZ, slip op. at 6-13 (D. Mass. Aug. 23, 2001). The Commonwealth now appeals that decision.

## II.

The pertinent claim in Gunter's pro se petition for habeas corpus is that there was ineffective assistance of counsel in his attorney's failure to present the merger doctrine argument.

-5-

That argument was that Gunter could not be convicted for Berry's murder because the underlying felony and the homicide had merged, leaving no underlying felony for a felony murder conviction. It is unclear from Gunter's petition whether his claim is that counsel should have made the argument at trial or on appeal to the SJC. When counsel for Gunter was appointed in the federal habeas case, counsel elaborated on this theme, arguing that trial counsel should not have "permitted the jurors to remain in complete ignorance of the fact[] that . . . the 'Berry-assault' theory was legally inadequate," and that this violated defendant's right to counsel.

The district judge held that the ineffective assistance claim had been presented to the state court at what it found was the first possible opportunity, on a petition for rehearing to the SJC, and that the claim was therefore properly exhausted. In the rest of the opinion, the district court largely ignored the ineffective assistance of counsel issue. Rather, the court went directly to whether the argument that state trial counsel should have presented -- the merger doctrine argument -- was procedurally defaulted. The district court found that the merger doctrine argument was not procedurally defaulted and that the SJC's decision was "contrary to clearly established Federal law" because the jury did not perform any factfinding as to the bystander assaults that had not merged with the murder, and that the SJC had substituted as the underlying felony.

It is thus unclear what role the ineffective assistance claim was meant to play in the habeas petition: as a freestanding

claim or simply to provide cause to excuse the procedural default of failing to raise the merger doctrine argument.  We consider the "cause" question later in the opinion.

A. Procedural Default of Merger Doctrine Argument

A finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless that defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Here the SJC held that Gunter had procedurally defaulted the merger doctrine argument, that is, the argument that he could not be convicted for felony murder if the underlying felony (armed assault of Jack Berry) was not "separate from the acts of personal violence which constitute a necessary part of the homicide itself." Gunter, 692 N.E.2d at 525, 526-27.  Gunter could have made this argument even before the trial began, but he did not bring this argument to light on his own initiative in all his proceedings before the Massachusetts state courts.  The SJC specifically noted this, stating that "Gunter himself did not raise this issue." Id. at 526.

Despite the procedural default and to petitioner's potential benefit, the SJC acted under its § 33E power, Mass. Gen. Laws ch. 278, § 33E, by asking the procedurally defaulted question itself, and requesting briefing on the issue in the course of determining whether to excuse the default on a miscarriage of

-7-

justice theory.  Under § 33E, in capital cases such as this one, the SJC may overlook procedural defaults if there is a substantial likelihood that a miscarriage of justice has occurred.  Id.; see also McCown v. Callahan, 726 F.2d 1, 3 (1st Cir. 1984) (citing Commonwealth v. Tavares, 385 Mass. 140, 430 N.E.2d 1198, 1203-04 (1982)).

The SJC concluded that "there was no substantial likelihood of a miscarriage of justice in the conviction of Gunter as a joint venturer."  Gunter, 692 N.E.2d at 526-27.  The court noted that if the underlying felony is assaulting someone in a dwelling, and if the acts "constituting that assault also cause the homicide, [the court] could not conclude that the felony defined in G.L. c. 265, § 18A [assault with a dangerous weapon in a dwelling house], is separate from the acts of personal violence that constitute a necessary part of the homicide itself."  Id. at 526. The SJC went on to say that "[h]ad the Commonwealth presented evidence only of the assault on Berry, [the court] could not conclude that the assault was 'independent.'"  Id.  Because the Commonwealth had also presented evidence of assault on Gilbert, Madden, and McKenzie, there was no miscarriage of justice.

The SJC's conclusion was that even if the Commonwealth's original prosecution theory was defective, petitioner procedurally defaulted the claim and would not be saved from his default by a miscarriage of justice finding.  There was no miscarriage of justice because Gunter was, on the evidence, guilty of felony murder, even had the indictment and instructions specified the

-8-

correct theory. The SJC's ruling amounted to nothing more than a decision that Gunter would not be absolved from his procedural default under its miscarriage of justice review.

If the SJC did not regularly and consistently enforce this procedural default rule, then it would not, for federal habeas purposes, constitute an adequate and independent state ground. See Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988) (when a state procedural rule has not been "consistently or regularly applied" it cannot be "an adequate and independent state ground for affirming petitioner's conviction" on direct review in the Supreme Court); see also Harris v. Reed, 489 U.S. 255, 262-63 (1989) (the adequate and independent state ground doctrine applies to cases on direct review to the Supreme Court and to federal habeas cases). But the SJC does do so. The SJC regularly enforces the rule that a claim not raised is waived. See, e.g., Commonwealth v. Fernandes, 430 Mass. 517, 722 N.E.2d 406, 409 n.13 (1999); Commonwealth v. Dockham, 405 Mass. 618, 542 N.E.2d 591, 599-600 (1989); Commonwealth v. Johnson, 374 Mass. 453, 373 N.E.2d 1121, 1127-28 (1978). Thus, this rule is firmly established. Miscarriage of justice review by the SJC under § 33E does not itself create independent rights in habeas petitioners. The regularity with which the state waiver law is applied is not disrupted by the availability or the exercise of state miscarriage of justice review. Tart v. Massachusetts, 949 F.2d 490 (1st Cir. 1991) (stating that the SJC's miscarriage of justice review does not by itself negate the state's contemporaneous objection rule); Puleio

v. Doucette, 830 F.2d 1197, 1200 (1st Cir. 1987) (same); McCown, 726 F.2d at 4 (same).

Further, where, as here, the state court has unequivocally held that there was a procedural default (on the merger doctrine argument) and that it would not excuse that default, the unexplained denial of a petition for rehearing arguing that the court's discretionary miscarriage of justice review was incorrect and raising ineffective assistance for the first time, cannot fairly be said to rest on federal law. If the last state court to review a petitioner's case reaches the merits of a federal claim presented to it, any bar to federal court review is lifted. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) (citing Harris, 489 U.S. at 262); see also Doucette v. Vose, 842 F.2d 538, 539-540 (1st Cir. 1988) (giving an example of a state court doing so). However, when the last state court decision is an unexplained order, there is "a presumption which gives [it] no effect -- which simply 'looks through' [it] to the last reasoned decision." Nunnemaker, 501 U.S. at 804. Here, the order denying the petition for rehearing stated only that the "Petition for Rehearing . . . had been considered and denied." We therefore "look through" to the SJC's last opinion which rested on the state procedural default. None of the state court's actions lifted the procedural bar.

To the extent the district court held that there was no procedural default, it was in error. State procedural default is excused and federal habeas review is permitted only if there is cause and prejudice. Nonetheless, the district court rejected the

-10-

application of the cause and prejudice standard outlined in Coleman, 501 U.S at 750, saying it was inapplicable to this case. The district court said there was no procedural default of what it thought was an independent claim. It characterized the constitutional claim before it as not being "based on the merger doctrine in the usual sense, but on how the SJC sought to preserve Petitioner's conviction once it had decided that the merger doctrine applied." The district court was in error: its characterization of the claim is in essence an attempt to critique the SJC's discretionary miscarriage of justice review and the SJC's decision not to excuse the procedural default.

A federal court considering a habeas corpus petition does not review, under the due process clause or otherwise, a state court's discretionary decision not to waive a procedural default under state law. "The mere fact that a state appellate court engages in a discretionary, and necessarily cursory, review under a 'miscarriage of justice' analysis does not in itself indicate that the court has determined to waive an independent state procedural ground for affirming the conviction." Tart, 949 F.2d at 496. To engage in such a factual analysis is to undermine the rule that a state court's finding of procedural default is an adequate and independent state ground.

If some exceptional facts might lead a federal court to conclude that the state court's exercise of its discretion itself constituted an independent constitutional violation, this case does not present them. The SJC did not, as the district court reasoned,

render its own verdict of guilty on a new theory. Instead, it left intact an existing jury verdict, to which Gunter had preserved no valid objection, because after reviewing the whole record it concluded that justice had been done.

B. Cause and Prejudice or a Fundamental Miscarriage of Justice

Having ruled that the SJC's judgment rests on an adequate and independent state procedural ground -- default of the merger doctrine argument -- we describe what are the normal subsequent analytic steps for a federal habeas court. The next question to ask is whether petitioner has shown that there was cause for the default and actual prejudice, or that there was a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; see also Levasseur v. Pepe, 70 F.3d 187, 192 (1st Cir. 1995). The district court did not go through this analysis because it erroneously concluded there was no procedural default.

The general requirement for cause for a procedural default is that the prisoner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). One factor accepted as cause is ineffective assistance of counsel at a level which violates the Sixth Amendment. Coleman, 501 U.S. at 752. As the Court said in Carrier:

> So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, [466 U.S. 668 (1984)], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.

Carrier, 477 U.S. at 488.  Because the claimed error here was by counsel at trial and on first appeal, the Strickland right adhered. See Smith v. Murray, 477 U.S. 527, 535-36 (1986) (applying Strickland to a claim of attorney error on appeal); cf. Coleman, 501 U.S. at 755-57 (refusing to consider attorney error on an appeal from a denial of state postconviction relief as a possible cause).

When, however, the habeas petitioner wants to use ineffective assistance of counsel to establish cause to excuse a state procedural default, that ineffective assistance claim must itself ordinarily be fairly presented to the state courts and exhausted.  Edwards v. Carpenter, 529 U.S. 446, 450-54 (2000); Carrier, 477 U.S. at 488-89.  An ineffective assistance claim requires a great deal of factual development.  As the Court stated in Carrier, without exhaustion requirements for ineffective assistance claims, "[i]n order to determine whether there was cause for a procedural default, federal habeas courts would routinely be required to hold evidentiary hearings to determine what prompted counsel's failure to raise the claim in question."  477 U.S. at 487.  The factual development for an ineffective assistance claim, like that for any other constitutional claim on habeas, should occur in the state court system.  Alternatively, where petitioner has failed to exhaust the ineffective assistance claim, petitioner must show cause for and prejudice from his failure to do so. Carpenter, 529 U.S. at 453.

Here, the parties dispute whether the ineffective assistance claim was fairly presented to the state court. Raising a claim for the first time to the state's highest court on discretionary review is not fair presentation for purposes of exhaustion. See Castille v. Peoples, 489 U.S. 346, 351 (1989). The Supreme Court in Castille held that "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless" there are important and special considerations, it has not been fairly presented. Id.

In this case, Gunter presented the ineffective assistance claim for the first and only time in the petition for rehearing to the SJC. The Massachusetts rule which provides for petitions for rehearing clearly states that "[a]ction upon a petition is in the discretion of [the] quorum or panel" that decided the appeal. Mass. R. App. P. 27(a). Just as in Castille, petitioner here raised the claim for the first time to the state's highest court on discretionary review. He did not fairly present it to the state court, giving it a full opportunity to deal with the claimed constitutional violation and develop the facts surrounding this claim.

There was an alternative available for Gunter to exhaust the ineffective assistance claim. Gunter could have filed a motion for a new trial as he was entitled to do as of right under Massachusetts law. Mass. R. Crim. P. 30(a). Federal habeas review does not demand that a petitioner in every case ask the state for collateral relief where he has already fairly presented the claim

-14-

and the evidence on direct appeal.  Brown v. Allen, 344 U.S. 443, 447 (1953).  However, where the claim has not been fairly presented on direct appeal, as happened here, it should be fairly presented to the state court through a motion for collateral relief.  Byrnes v. Vose, 969 F.2d 1306, 1307-08 (1st Cir. 1992) (applying this requirement).  Because Gunter did not do so, he has not exhausted his claim of ineffective assistance.[1]

And even if we were to assume that the ineffective assistance claim was exhausted, that there was sufficient cause for and prejudice from the procedural default,[2] and that a state's

---

[1]    As we stated earlier, it is unclear whether Gunter is attempting to use the ineffective assistance of counsel claim as cause for the procedural default or as a freestanding claim.  In this opinion, we have analyzed the ineffective assistance claim as an attempt to provide cause for the procedural default.  However, this claim also fails when it is analyzed as a freestanding claim, because, as we have stated, it was not exhausted in the state court.

[2]    We do not want to encourage further, hopeless litigation. Even if we were to assume that Gunter properly exhausted the ineffective assistance of counsel claim, we are doubtful that the Strickland standard can be met so that ineffective assistance would constitute cause for the procedural default in this case.  As the Supreme Court stated in Carrier, "the mere fact that counsel failed to recognize the factual or legal basis for a claim . . . does not constitute cause for a procedural default."  477 U.S. at 486.
      We are also doubtful that petitioner could ever show other cause for his procedural default.  There was no external impediment imposed by the state which caused counsel not to raise the merger doctrine argument.  The merger doctrine argument in felony murder cases is not a new one, and cannot be said to have been unavailable to counsel on appeal.  See Reed v. Ross, 468 U.S. 1, 14-16 (1984) ("[w]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.").  The intellectual underpinnings for the merger doctrine argument, as applied to the felony murder rule, are well established in case law and literature.  See P. Robinson, Imputed Criminal Liability, Yale L.J. 609, 651 n.159 (1984) (citing cases including People v. Ireland, 450 P.2d 580 (Cal. 1969)).  The

-15-

discretionary miscarriage of justice review may be subject to some form of constitutional constraint in these odd circumstances, Gunter still has no habeas-worthy constitutional claim. The district court's ultimate conclusion, is, in our view, simply wrong.

There is no serious question of fair notice to the defendant of the crimes involved either under the SJC's bystander assault felony murder theory or under the assault on the murder victim felony murder theory. As the SJC noted, the statutory form of indictment was all that was required as to notice, and the indictment charged assault in a dwelling house with a dangerous weapon. Proof of the assault on the bystanders was part of the Commonwealth's case all along, and the evidence of those assaults was produced before the jury. Nor do we see any constitutional infirmity in the jury instruction worthy of habeas relief. To the extent the district court was concerned that the jury had not been instructed that it needed to find assault on each bystander, this court has rejected that concern as a basis for habeas. In Stewart v. Coalter, 48 F.3d 610 (1995), we said:

> Ironically, if the joint venture were one to commit robbery, it appears that [the defendant] would still have been guilty of murder under the felony murder rule followed in Massachusetts and in many other states.

merger doctrine argument was also clearly viable in Massachusetts. See Commonwealth v. Quigley, 391 Mass. 461, 462 N.E.2d 92, 95 (1984). In addition, the factual underpinnings for the merger doctrine argument were available to Gunter's counsel from the time he was charged with the crime. See Carrier, 477 U.S. at 488 (stating that "a showing that the factual . . . basis for a claim was not reasonably available to counsel . . . would constitute cause").

-16-

> See, e.g., Commonwealth v. Claudio, 418 Mass 103, 634 N.E.2d 902, 906-07 (1994). Of course, that would not be a basis for sustaining [the defendant's] conviction on direct appeal since he was never charged with felony murder. But we doubt whether it would be part of the office of habeas corpus to release a prisoner whose "defense" in seeking the writ was that he had committed murder but only on a theory not properly presented to the jury.

Stewart, 48 F.3d at 617. The same is true here.

This reasoning also disposes of any argument that a fundamental miscarriage of justice would occur if we fail to consider the claim. To show that a fundamental miscarriage of justice would occur in the habeas context, "petitioner must establish actual innocence." Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999). To do this, "petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995). Here, there is no credible argument that Gunter is actually innocent of felony murder on a joint venture theory.

The district court's order granting habeas corpus is reversed, the writ is vacated, and the petition is dismissed.