Smart v. NYS DOC                    CV-99-179-M    09/30/02

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Pamela Smart,
      Petitioner

      v.                                          Civil No. 99-179-M
                                                  Opinion No. 2002 DNH 174
Glenn S. Goord,
New York State Department of
Correctional Services,
      Respondent


**O R D E R**


Petitioner was convicted in the New Hampshire Superior Court as an accomplice to the first degree murder of her husband, conspiracy to commit that murder, and witness tampering.  She seeks habeas corpus relief, asserting violations of her Fifth, Sixth, and Fourteenth Amendment rights, denial of due process and a fair trial, and violation of her Eighth Amendment protection from cruel and unusual punishment.  Respondent counters that petitioner is entitled to no relief on any of her claims.


**Procedural History**

Petitioner was convicted on March 22, 1991, following a 23-day jury trial.  She filed post-trial motions for relief in the

New Hampshire Superior Court, and pursued a direct appeal of her convictions to the New Hampshire Supreme Court on several grounds, some of which are reasserted in this habeas petition. The New Hampshire Supreme Court affirmed the petitioner's conviction in a published opinion. See State v. Smart, 136 N.H. 639 (1993). Four years later, petitioner filed a state habeas petition in the Superior Court, raising (and exhausting) the claims presented here. The state habeas court denied relief, and, on appeal from that decision, the New Hampshire Supreme Court summarily affirmed. Petitioner then timely filed this petition for federal habeas relief.[1] She is currently serving a mandatory sentence of life imprisonment, without the possibility of parole.

## Standard of Review

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to

---

[1] The petition was initially filed in the United States District Court for the Southern District of New York, where petitioner is incarcerated pursuant to an agreement between the states of New Hampshire and New York. The case was transferred here as petitioner is in the custody of the State of New Hampshire.

grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the Unite States," at the time the state conviction became final.  28 U.S.C. § 2254(d)(1).  See also Williams v. Taylor, 529 U.S. 362, 399 (2000).

Additionally, if the state court resolved a petitioner's claim on an "adequate and independent state ground," a federal court may only disturb that ruling if the petitioner shows "cause . . . and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).  See also Gunter v. Maloney, 291 F.3d 74 (1st Cir. 2002).  "Cause" is particularly relevant when the independent state ground is petitioner's procedural default (i.e., the failure to raise the issue on direct appeal).  In that case, petitioner must provide a reason

3

for the default that is external to the petitioner.  See <u>Coleman</u>, 501 U.S. at 750, 752.  The "fundamental miscarriage of justice" test can be met by showing "actual innocence" or "a fair probability that, in light of all the evidence . . . the trier of the facts would have entertained a reasonable doubt of [her] guilt."  <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992) (quoting <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 455, n.17 (1986)).

## Discussion

This petition asserts five grounds upon which relief should be granted.  Each was fully presented to the New Hampshire Superior Court, and, subsequently, to the New Hampshire Supreme Court, thereby satisfying the requirement that federal review be preceded by the exhaustion of available state remedies.  <u>See</u> 28 U.S.C. §§ 2254(b) and (c).

## Asserted Grounds for Relief

Petitioner first asserts that she is entitled to a new trial because on three occasions the trial judge engaged in <u>ex</u> <u>parte</u> communications with members of the jury, in violation of her constitutional right to be present at all critical stages of the

4

trial, and her right to be tried by a fair and impartial jury (Ground 1).  The first challenged communication took place when the trial judge informed the jury, during the afternoon of the first day of deliberations, that they would have to be sequestered, beginning the next night, if a verdict was not reached.  The second communication involves the judge's in camera, on the record, questioning of a juror about alleged juror misconduct.  The final communication took place after petitioner was convicted and also involved the judge's in camera, on the record, questioning of a (different) juror about alleged misconduct.  Petitioner argues that her presence on those occasions could not be waived, and her absence undermines her conviction.

Petitioner also says she is entitled to a new trial because the presiding judge violated her Fifth and Sixth Amendment rights to due process and to confront witnesses when he failed to allow her to re-call co-defendants who had previously been called as witnesses by the prosecution (Ground 2).  After the witnesses had been excused, petitioner discovered letters written by them while they were incarcerated.  She claims the letters demonstrated "a

5

total disdain for the criminal trial process and prove that the witnesses had an opportunity to collaborate on their testimony." Pet. at 22. Accordingly, she says, she should have been permitted to re-call and cross-examine those witnesses regarding the content of the letters, presumably to undermine their credibility and establish fabrication.

Petitioner's third ground for habeas relief is that the State failed to provide her with exculpatory evidence in its possession, thereby violating her right to due process (Ground 3). That allegation arises from petitioner's belief that one of her co-defendants, who testified against her, was provided with an additional, undisclosed, incentive to testify, which should have been revealed under the mandate of Brady v. Maryland, 373 U.S. 83 (1963). See also Giglio v. United States, 405 U.S. 150 (1972)(impeachment evidence is exculpatory within the meaning of Brady and, if material, must be disclosed).

Next, petitioner claims that extensive publicity surrounding the investigation leading to her indictment, and her trial, as well as the disruptive presence of members of the media, both in

6

the courtroom and around the courthouse, all combined to deprive her of a fair trial (Ground 4). Petitioner argues that her rights to both an impartial jury and fair trial were violated because the trial judge denied her motion for change of venue or, in the alternative, failed to sua sponte order a continuance, given the extensive media coverage of her case. Drawing comparisons between her trial and that considered in Sheppard v. Maxwell, 384 U.S. 333 (1966), petitioner says the trial atmosphere was so chaotic due to the presence and behavior of the media that she could not possibly have received a fair trial.

Finally, petitioner argues that the sentence imposed – life in prison without the possibility of parole – violates the Eighth Amendment's prohibition against cruel and unusual punishment, since it is disproportionally severe in relation to the crimes of conviction. She points to the fact that she was only 23 years old when sentenced, and that her co-conspirators, who actually carried out the murder of her husband, received substantially less severe sentences (Ground 5).

## Analysis

Opposing habeas relief, Respondent appropriately begins by pointing to the earlier decisions of the New Hampshire Supreme Court and state habeas court. The state court found Grounds 1 (ex parte communication) and 3 (failure to disclose impeachment evidence) to have been procedurally defaulted. Since a procedural default constitutes an "adequate and independent state ground" upon which to deny relief, federal review of those two claims is available only upon a showing of both cause for the default and prejudice. Alternatively, petitioner must demonstrate that the failure to review the claims she advances will result in a fundamental miscarriage of justice. See Williams v. Taylor, supra. Respondent says petitioner has not made the requisite showing and is, therefore, not entitled to federal review of those claims. Additionally, respondent argues that even if the court considers the merits of those claims, petitioner would still be entitled to no relief, because her constitutional rights were not violated by any of the three communications or by the alleged withholding of information.

The state habeas court declined to consider the merits of Grounds 2 (deprivation of rights of confrontation and cross-examination related to recalling witnesses) and 4 (deprivation of the right to an impartial jury and fair trial due to extensive publicity) because they had already been fully briefed, litigated, and resolved by the New Hampshire Supreme Court on direct appeal. Respondent argues that petitioner is not entitled to federal relief because the state courts' collective rulings on those issues were neither "contrary to," nor did they involve "an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court." Id.

The state courts also rejected Ground 5 (unconstitutionality of a life sentence), finding life in prison without the possibility of parole to be proportional to the crimes of which petitioner was convicted – orchestrating the deliberate murder of her husband by students in the high school in which she taught. Respondent again argues that petitioner is not entitled to relief because the state courts' findings were not "contrary to," and did not involve "an unreasonable application of, clearly

established Federal law, as determined by the United States Supreme Court." See id. Respondent is correct.


I.    Grounds 1 and 3 (Ex Parte Communication / Failure to
      Disclose Impeachment Material)

That a claim is procedurally defaulted constitutes an "adequate and independent state ground" for denying relief. See Coleman, 501 U.S. at 758. Accordingly, this court cannot grant relief on Ground 1 or 3 unless petitioner first establishes both cause for her procedural default, and actual prejudice from the alleged violation of federal law, or, unless petitioner demonstrates that, based on the record as a whole, there is a fair probability that, absent the alleged violations, the finders of fact (here, the jury) would have entertained a reasonable doubt as to her guilt. See Id. at 750.


The state habeas court determined that, with regard to the trial judge's communications with the jury, petitioner failed to contemporaneously object to the first two challenged communications. Relying upon applicable New Hampshire law, the court found that failure to interpose contemporaneous objections barred petitioner from pursuing those claims on either direct

10

appeal or collateral review.  The court further found that while the third communication was addressed in a motion to the trial court seeking a new trial (which was denied), petitioner failed to raise that issue on direct appeal, and was thus precluded from raising it in a subsequent state petition for collateral review.

The state court similarly found that, although petitioner raised and litigated Ground 3 (failure to disclose alleged impeachment material related to an adverse witness) during post-conviction proceedings, she failed to brief the issue on direct appeal.  Again relying upon applicable New Hampshire law, the state habeas court ruled that relief was unavailable.

As respondent points out, petitioner has offered no reason at all for her failure to interpose the required objections or to take the requisite appeals, nor has she shown that actual prejudice resulted from any of the alleged violations of federal law.  Additionally, she has not suggested that, based on the record as a whole, there would be reasonable doubt as to her guilt in the absence of the alleged violations of her federal rights, or any other reason to lack confidence in the outcome of

11

her trial.  Since petitioner has not even attempted to establish cause and prejudice relative to her procedurally defaulted claims, and has not established any basis upon which to make an "actual innocence" claim, the defaulted claims are not subject to federal review.  Moreover, the record reveals no possible prejudice from either the routine judicial communication complained of, nor the failure to disclose possible impeachment material related to one of the prosecution's witness's motivation for testifying against her (the record discloses that the state habeas court found that the impeachment evidence petitioner references did not in fact exist).

II.  <u>Grounds 2 and 4</u> (Disallowing recall of witnesses and Prejudicial Publicity)

In addressing Ground 2 - the trial judge's refusal to allow petitioner to re-call witnesses after discovery of letters authored by co-defendants - the New Hampshire Supreme Court fully recognized that defendants do enjoy a constitutional right to confront adverse witnesses, and attack their credibility through cross-examination.  But, in petitioner's case, the trial judge determined (and her legal counsel conceded) that the letters did not relate to new issues.  The judge also determined that "review

12

of the extensive cross-examination of [her co-defendants] reveals that all of [the issues raised] had been explored." Smart, 136 N.H. at 668. Because a trial judge has "broad discretion . . . to preclude repetitive and unduly harassing interrogation," Davis v. Alaska, 415 U.S. 308, 316 (1974), the New Hampshire Supreme Court concluded that petitioner had not been deprived of her Fifth and Sixth Amendment rights.

Nothing in petitioner's pleadings before this court suggests that the state supreme court's rulings were anything other than entirely consistent with and proper applications of United States Supreme Court precedent as it pertains to these asserted grounds for relief. It is also apparent that the desired line of questioning would have had no substantial effect on the trial result and petitioner's inability to pursue it does not in any way undermine confidence in the jury's verdict. Recalling the co-defendant witnesses for resumed cross-examination would have been entirely cumulative of what had already been fully explored.

Regarding Ground 4 (Prejudicial Publicity), after an exhaustive review of the record, including voir dire, trial, and post-trial transcripts, and thirty hours of videotape of the

13

trial, the New Hampshire Supreme Court rejected petitioner's claim that she was denied an impartial jury and a fair trial due to the presence and behavior of the media. Smart, 136 N.H. at 648-59. The New Hampshire Supreme Court concluded that petitioner's trial and associated media conduct were substantially different from that in Sheppard v. Maxwell, finding "any comparison [between the two] to be illusory." Id. Based on the totality of the circumstances and deference to the trial judge's role in determining impartiality, as required by United States Supreme Court jurisprudence, the New Hampshire Supreme Court found that the jury pool was not so tainted that an impartial jury could not be chosen. The New Hampshire Supreme Court also found that ample safeguards had been put in place, and enforced throughout the trial, to protect petitioner's due process rights. See Id.; see also Mu'Min v. Virginia, 500 U.S. 415, 427 (1991) ("primary reliance on the judgment of the trial court makes good sense"); Patton v. Yount, 467 U.S. 1025, 1031-32 (1984); Irvin v. Dowd, 366 U.S. 717, 724 (1961) (only overturn factual determination of trial judge if "manifest error").

14

It is also apparent that the state supreme court considered petitioner's prejudicial publicity claim in light of federal constitutional requirements:

> Although the defendant bases her claim on both the State and Federal Constitutions, she relies primarily on federal law, and does not argue for a higher standard under the New Hampshire Constitution. Because we believe the principles are the same in any event, we address her argument under both constitutions, by reference to federal decisions.

Smart, 136 N.H. at 646. The state supreme court correctly identified, construed, and applied controlling United States Supreme Court precedent in resolving petitioner's prejudicial publicity claim, noting that "adverse pretrial publicity can create such a presumption of prejudice in a community that the juror's claims that they can be impartial should not be believed." Id. at 647 (quoting Patton v. Yount, supra, at 1031). But, the court also recognized that under federal precedent, a "trial court's finding that a jury was impartial should only be overturned for manifest error." Id. Properly distinguishing petitioner's case from that of Irvin v. Dowd, 366 U.S. 717 (1961), the state supreme court noted that no member of petitioner's jury expressed an opinion on voir dire that she was

15

guilty, and no juror was seated over her objection.  Under such circumstances, observed the court, "[i]t is difficult to conclude . . . that the trial court's finding that the jury was impartial constituted manifest error." Id. at 648.

The state supreme court also fully considered the nature of what was undeniably extensive pretrial publicity surrounding petitioner's case - publicity that may well have been unprecedented in the state, certainly unprecedented in the modern era on instant mass communication.  Again, the court properly identified and applied United States Supreme Court precedent, determining that, while extensive, the pretrial publicity consisted by and large of "straightforward, unemotional factual accounts of events and of the progress of . . . investigations." Id. at 649 (quoting United States v. Haledman, 559 F.2d 31, 61 (D.C. Cir. 1976)).  See also Murphy v. Florida, 421 U.S. 794, 801 n.4 (1975) ("To ignore these real differences in the potential for prejudice [between hostile or prejudicial publicity and factual reporting] would not advance the cause of fundamental fairness, but only make impossible the timely prosecution of persons who are well known in the community, whether they be notorious or merely prominent.").

16

In concluding that "notwithstanding extensive pretrial publicity, there was no manifest error in the trial court's determination that an impartial jury had been selected for the [petitioner's] trial," the state supreme court's application of the analytic framework dictated by the relevant Supreme Court precedent was neither objectively unreasonable, nor contrary to that precedent. As noted previously, on federal habeas review, state court findings and rulings can only be disturbed if those rulings are contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.

Petitioner does not address the applicable standard of review in her pleadings but, instead, presents legal argument as if *de novo* review were available in this court. It is plainly not available. In any event, there is no basis for federal habeas relief relative to petitioner's prejudicial publicity claim.

III. <u>Ground 5</u> (Disproportionate and Unconstitutional Life Sentence)

Again, petitioner presumes, incorrectly, that <u>de novo</u> review is available in this court. Petitioner fails to provide any

17

indication as to how the state habeas court's finding - that her sentence does not amount to cruel and unusual punishment - is either contrary to, or involves an unreasonable application of, Supreme Court precedent.  In any event, a sentence of life imprisonment without the possibility of parole is certainly proportional to the crimes for which she was convicted - orchestrating the murder of her husband at the hands of her teenage students - and flatly does not violate the Eighth Amendment's proscription.  See generally Harmelin v. Michigan, 501 U.S. 957 (1991) (life sentence without possibility of parole for possessing large quantity of cocaine is neither disproportionate to the crime, nor does it violate the Eighth Amendment's Cruel and Unusual Punishments Clause).

## Conclusion

A paragraph by paragraph comparison of petitioner's state habeas petition and her federal petition sheds some light on why the petition before this court may not address critical issues, like the standard of review applicable in habeas cases brought pursuant to 28 U.S.C. § 2254.  Except for a few minor stylistic changes, petitioner appears to have filed the same legal

18

memorandum in both cases.  The basic question here is not whether petitioner can assert non-frivolous, or even colorable constitutional claims, because this court does not have de novo review authority.  Absent a showing of cause and prejudice, or a fundamental miscarriage of justice, in the case of issues decided against petitioner by the state's courts on adequate and independent state grounds, and absent state court rulings that are manifestly contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, see Williams, 529 U.S. at 405-06, federal habeas relief is not available to state prisoners.

Given the record and pleadings before the court, it is apparent that petitioner has not and cannot establish the predicates necessary to federal habeas relief.  Accordingly, given the limited scope of review by this court, petitioner's failure to assert any basis for extending relief under the applicable legal standards, and this court's finding of no basis in the record for affording federal habeas relief, the petition for writ of habeas corpus is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 30, 2002

cc:   Leslie H. Ben-Zvi, Esq.
      Mark L. Sisti, Esq.
      Ann M. Rice, Esq.