COMMONWEALTH *vs.* MICHAEL A. HOILETT.

Suffolk. October 4, 1999. - November 16, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Practice, Criminal,* Argument by prosecutor, Opening statement, Mistrial, Fair trial, Conduct of prosecutor, Instructions to jury, Sentence, Duplicative convictions, Capital case. *Evidence,* Photograph, Absence of witness, Inference.

At the trial of a murder case, the judge correctly denied the defendant's motion for a mistrial made after the prosecutor's opening statement, where any improper remark would not have left "an indelible imprint on the jurors' minds" and where the judge gave a strong curative instruction. [371-372]

There was no error, at the trial of indictments for murder and armed robbery while masked, in the admission in evidence of a sanitized mugshot of the defendant with appropriate instructions, where the witness's identification of the photograph was marginally relevant to the issue of the identity of the masked armed robber. [372-373]

At a murder trial, there was no reversible error in the judge's admission in evidence of two autopsy photographs. [373]

At the trial of a murder case, any prejudice arising from the prosecutor's improper use of the word "defendant" in questioning a witness who could not identify the armed, masked perpetrator and before any identification testimony had been received, and the prosecutor's alleged gesturing toward the defendant when referring to the masked man, was adequately addressed by the judge's specific curative instruction and order to the prosecutor to stop gesturing. [374]

A prosecutor's remarks in closing argument were not improper, where they were allowable comments on the strength of the defendant's argument and did not constitute an attack on defense counsel or misstate defense counsel's role. [375]

At a murder trial, there was no error in the judge's instructions to the jury on the presumption of innocence. [375]

At a criminal trial, the defendant was not entitled to a missing witness instruction with respect to a witness apparently equally available to both the prosecution and defense. [375-376]

Where a defendant was convicted of both first degree felony-murder and the underlying felony, armed robbery while masked, the duplicative conviction and sentence on the lesser included offense were ordered vacated. [376]

INDICTMENTS found and returned in the Superior Court Department on March 15, 1994.

The cases were tried before *Robert W. Banks*, J.

*James A. Couture* for the defendant.

*Rosemary Daly*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Michael A. Hoilett, appeals from his convictions of murder in the first degree based on felony-murder and armed robbery while masked. On appeal, the defendant claims error (1) in the denial of his motion for a mistrial after the Commonwealth's opening; (2) in the erroneous admission of photographs; (3) in the denial of his motion for a mistrial based on the prosecutor's conduct during trial; (4) in the prosecutor's closing argument; (5) in the instructions on the presumption of innocence, on the third prong of malice, and in the failure to give a missing witness instruction. He asks that his conviction of armed robbery while masked be vacated because it is duplicative of the conviction of felony-murder in the first degree. We affirm the defendant's conviction of felony-murder in the first degree. We agree with the defendant that the conviction of armed robbery while masked is duplicative and order that that conviction be vacated. We decline to exercise our power under G. L. c. 278, § 33E, to order a new trial or to order entry of a lesser degree of guilt.

1. *Facts.* We summarize the facts, viewing the evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). On the morning of February 28, 1994, the defendant, wearing a mask and carrying a shotgun, entered the AMC Market in the Dorchester section of Boston, said, "This is a hold up," and ordered everyone to the floor. One of the store's owners, the sixty-eight year old victim, was behind the counter getting cigarettes for a customer. The victim's son-in-law and three year old granddaughter were standing by a freezer in the store.

The defendant told the victim to give him the money from the cash register. At the same time, the victim's son-in-law managed to leave the market with his daughter. The victim's son-in-law then began to lower the security grate at the front of the store. The customer also left the store and, as soon as he was outside, he heard a gunshot.

After shooting the victim, the defendant fled from the store through the entrance that was partially blocked by the security grate. The defendant placed his leg below the security grate as the victim's son-in-law attempted to lower it. At least twice, the

son-in-law brought the grate down on the defendant's leg, and the defendant cried out in pain. Ultimately, however, the defendant escaped and fled the scene by walking slowly up Westville Street to Dakota Street. When the police entered the market, they found the victim. He had been shot at close range with a shotgun. He died in the market.

The defendant went to the apartment of some acquaintances, Anngolia Cartwright, Vimbai Bush, and Cheryl Jefferson on Dakota Street. As he entered the apartment, the defendant removed his mask. The defendant asked for Bush, a female acquaintance of the defendant. Cartwright heard him say, "f-g spick," and "Oh, man, oh, man I was f—d up. I hope he die. I hope he die."

The defendant appeared nervous. He was "pac[ing] the floor back and forth." His finger was bleeding. Bush asked the defendant what was wrong, and he replied, "Damn, I shouldn't did that, I don't know, I shouldn't did that. . . . He should have just given me the money." The defendant also said that "[t]hey tried to shut the grate on me" and "I shot him." Bush bandaged the defendant's finger and asked him to leave. When Bush left, the defendant was still in the apartment.

The next day, following a lead, the police came to the door of the Dakota Street residence. Bush initially told the police that she did not know anything. Subsequently, she gave a statement to the police. She also identified the defendant from a group of photographs the police showed her. The defendant was arrested and indicted for armed robbery while masked, murder, and possession of a sawed-off shotgun.[1]

The defense did not present any witnesses, choosing instead to focus on impeaching the credibility of the Commonwealth's key witnesses. Through cross-examination and closing argument, defense counsel suggested that the defendant was not the armed, masked robber and that the women in the Dakota Street apartment were lying to protect the guilty party.

2. *The Commonwealth's opening.* During his opening, the prosecutor stated that the police went to the apartment on Dakota Street and Jefferson answered the door. The prosecutor stated that Jefferson told the police that she was not home when

---

[1]At the conclusion of the Commonwealth's case, the judge allowed the defendant's motion for a required finding of not guilty on the indictment charging possession of a sawed-off shotgun.

the defendant arrived the day the murder was committed, but said that Bush and Cartwright were there. Defense counsel objected and moved for a mistrial because the prosecutor's statement was inconsistent with Jefferson's grand jury testimony. Defense counsel also objected because Jefferson was not listed on the prosecution's witness list. The judge denied the motion, but instructed the jury that the opening statement was not evidence. The defendant does not claim that this curative instruction was inadequate.

"The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." *Commonwealth* v. *Fazio*, 375 Mass. 451, 454 (1978), quoting *Posell* v. *Herscovitz*, 237 Mass. 513, 514 (1921). See *Commonwealth* v. *Hartford*, 346 Mass. 482, 486 (1963). See also *Commonwealth* v. *Breese*, 381 Mass. 13, 15-16 (1980). A mistrial may be appropriate "where the force of the prosecutor's opening remarks was overwhelmingly prejudicial and likely to leave an indelible imprint on the jurors' minds." *Fazio, supra* at 455.

The judge properly denied the defendant's motion for a mistrial. At sidebar, the prosecutor told the judge that he was as yet uncertain as to whether he would call Jefferson as a witness. The reference to the fact that Jefferson claimed not to have been at home when the police first asked her about the defendant's actions was not "overwhelmingly prejudicial," *id.*, or even critical, to the Commonwealth's case. Further, the Commonwealth never mentioned Jefferson's statements again. The single mention of her name during the Commonwealth's opening would not have left "an indelible imprint on the jurors' minds." *Id.* The judge delivered a strong curative instruction which we assume the jury heard and followed. See *Commonwealth* v. *Thomas*, 429 Mass. 146, 158 (1999); *Commonwealth* v. *Breese*, 381 Mass. 13, 16 (1980). There was no error in the judge's denial of the defendant's motion for a mistrial.

3. *Photographs.* When the police questioned Bush about who had come to her apartment on the day of the murder, she picked out the defendant's photograph from a group of police photographs. During her direct examination, the prosecutor offered a sanitized copy of the photograph. Defense counsel objected, having argued in a motion in limine that the jurors would assume the defendant had a criminal record if they knew

that the police had his photograph on file. The judge overruled the objection, and the photograph was admitted. The judge also instructed the jury that they should not draw any inference from the fact that the police possessed a photograph of the defendant. The judge told the jury that the police had access to photographs of private citizens through the Registry of Motor Vehicles and through the licensing of various professions such as taxicab drivers and common victualers.

The defendant concedes that the Commonwealth removed any markings identifying the photograph as a mugshot. Bush knew the defendant. Therefore, her identification of the photograph was marginally relevant to the issue of identification of the armed, masked robber. We conclude there was no reversible error in the admission of this photograph.

The judge also admitted in evidence two photographs taken during the autopsy of the victim. The first photograph showed the close-range shotgun wound and the victim's avulsed intestines. The second photograph showed the shape of the wound highlighted in white. These photographs were only relevant to show the close range of the shot.[2]

Generally, photographs are admissible in the discretion of the judge. We reiterate that "[t]he rule in this area is, as has been stated, one of trial judge discretion. Whether photographic evidence is unnecessary or inflammatory must be considered on a case-by-case basis against the issues that have been raised at trial. We caution, however, that trial judges must take care to avoid exposing the jury unnecessarily to material that might inflame the jurors' emotions and possibly deprive the defendant of an impartial jury. In addition to considering whether the judge has abused his [or her] discretion, we also consider under G. L. c. 278, § 33E, in a case in which the defendant has been convicted of first degree murder, the over-all fairness of the trial. In a situation in which the use of photographs may cause prejudice or is especially unfair, or where this admonition has not been followed, the existing standards of review provide a sufficient basis to grant relief to a defendant." *Commonwealth v. Simmons*, 419 Mass. 426, 432 (1995). The admission of the three contested photographs did not undermine the over-all fairness of the trial.

---

[2]The defendant also was tried on a theory of deliberate premeditation. The photographs taken during the autopsy are marginally relevant on that issue. The jurors rejected the Commonwealth's theory of deliberately premeditated malice aforethought.

4. *The prosecutor's conduct during the trial.* During the direct examination of the victim's son-in-law, the prosecutor twice referred to the armed, masked robber as "the defendant."[3] At that point in the trial, no evidence had been presented as to the armed, masked robber's identity. Defense counsel objected immediately after both references, and the judge sustained the objections.

Subsequently, during the questioning of a witness who saw a masked man walking away from the AMC Market, defense counsel again objected, claiming that the prosecutor was gesturing toward the defendant when he referred to the masked man. The judge noticed that the prosecutor was "kind of raising his hand — both hands in gestures," but was not certain that these gestures qualified as "pointing." Nevertheless, the judge told the prosecutor to stop gesturing.

The judge also instructed the jurors that any gesturing toward the defendant they might have noticed was not evidence. He added that the prosecutor's use of the word "defendant" was not evidence. The judge told the jury that, "[a]s of this point in the case no one has been identified as the person who purportedly was in the store in question or carrying the gun."

The prosecutor's use of the word "defendant" in questioning a witness who could not identify the armed, masked robber as the "defendant" prior to the introduction of any identification evidence was improper. However, neither of the questions in which the prosecutor used the word "defendant" to describe the armed, masked robber was answered by the witness. It was clear from the witness's testimony that he was unable to identify the defendant as the armed, masked robber. We are persuaded that the judge's specific curative instruction on this point was adequate to address any possible prejudice to the defendant. On the matter of the prosecutor's gestures, we defer to the trial judge who observed the gestures.

---

[3]THE PROSECUTOR: "[Y]ou went around the corner and observed the defendant, is that correct?"

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Sustained."

THE PROSECUTOR: "How far . . . did you see the defendant walk down Iowa Street?"

"  . . .

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Come on over here for a minute."

5. *The prosecutor's closing argument.* During closing arguments, the prosecutor told the jury that defense counsel was "arguing two propositions to you. . . . He can't have it both ways, okay . . . believe this part of it, but don't believe that part of it. Whatever suits his client, that's how he's focusing the evidence. And I'd ask you to focus the evidence in a different way." Defense counsel moved for a mistrial, asserting that it was not appropriate for the Commonwealth "to make any comment upon my role." The judge denied the motion. We conclude that there was no error in the prosecutor's summation.

The prosecutor's comments did not introduce new evidence or opinion into the trial. The prosecutor addressed the nature of "the trial tactics of the defence and . . . evidence developed . . . by the defence." *Commonwealth* v. *Grimshaw*, 412 Mass. 505, 507 (1992), quoting *Commonwealth* v. *Dunker*, 363 Mass. 792, 800 (1973). See *Commonwealth* v. *Evans*, 415 Mass. 422, 429 (1993); *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 272 (1982). The prosecutor did nothing more than "express[] his view of the strength of the [defendant's argument]." *Grimshaw*, *supra* at 508, and cases cited. Therefore, the prosecutor's comments did not present an ad hominem attack on defense counsel, as asserted on appeal. Nor did the prosecutor misstate defense counsel's role.

6. *Error in the instructions.* a. *Presumption of innocence.* The judge instructed the jury that, if the Commonwealth proves guilt beyond a reasonable doubt, then the presumption of innocence "will disappear, it never existed." There is no merit to the defendant's contention that the presumption remains as an "obstacle." The instruction here was substantially similar to the instruction we approved in *Commonwealth* v. *Gunter*, 427 Mass. 259, 266-267 (1998). There was no error.[4]

b. *Missing witness instruction.* The defendant argues that he is entitled to a missing witness instruction because the Commonwealth mentioned Jefferson in his opening to the jury. We do not agree.

"The trial judge is vested with the discretion to refuse to give

---

[4]The defendant complains that the judge's use of the instruction on third prong malice was error. We need not reach that issue because the conviction of murder in the first degree was based on felony murder. See *Commonwealth* v. *Andrews*, 427 Mass. 434, 440 n.5 (1998), citing *Commonwealth* v. *Chipman*, 418 Mass. 262, 270 n.5 (1994). See also *Commonwealth* v. *Scott*, 408 Mass. 811, 821 (1990).

the instruction, and the defendant is not entitled to the instruction as a matter of right." *Commonwealth* v. *Richardson*, 429 Mass. 182, 184 (1999). Jefferson was homeless. Both the prosecution and the defense had the same telephone number for Jefferson. There is no evidence that the prosecution possessed any advantage over the defense in reaching Jefferson by telephone.[5] Where "a witness is equally available to parties on both sides of a dispute, no inference should be drawn against either side for failing to call the witness." *Commonwealth* v. *Cobb*, 397 Mass. 105, 108 (1986), and cases cited. See *Commonwealth* v. *Thomas*, 429 Mass. 146, 151 (1999).

7. *The concurrent sentences for felony-murder and armed robbery while masked.* The Commonwealth concedes that the concurrent sentences imposed on the defendant for both first degree felony-murder and the underlying felony are duplicative. See, e.g., *Commonwealth* v. *Mello*, 420 Mass. 375, 398 (1995) ("Even where the sentence imposed runs concurrently, the conviction of the underlying felony is duplicative and must be set aside"), citing *Commonwealth* v. *Jones*, 382 Mass. 387, 395 (1981); *Commonwealth* v. *Berry*, 420 Mass. 95, 114 (1995). We agree.

On the issue of duplicative convictions, "[t]he appropriate remedy is to vacate both the conviction and sentence on the lesser included offense, and to affirm the conviction on the more serious offense." *Commonwealth* v. *Mello*, *supra*. Because the armed robbery while masked is the sole basis of the felony-murder conviction, we vacate the conviction of armed, masked robbery. See *Commonwealth* v. *Cruz*, *ante* 182, 196-197 (1999).

8. *G. L. c. 278, § 33E, review.* Pursuant to our power under G. L. c. 278, § 33E, we have reviewed the transcript and conclude that the interest of justice does not require a new trial

---

[5]Jefferson did appear at the courthouse once during the Commonwealth's presentation of its case-in-chief. She apparently made herself known to a court official who notified the prosecutor during her examination of a forensic witness. As far as can be determined the prosecutor "told the sergeant that, 'No, I'm not going to use her.' " Jefferson then left the courthouse.

In these circumstances, where the prosecutor had no advance knowledge that Jefferson was going to appear and was notified of her presence in the middle of questioning a witness, we cannot say, as defense counsel suggests, that the prosecutor should have made certain that Jefferson remained in the courthouse in case the defendant wanted to question her.

or entry of a lesser degree of guilt. The conviction of felony-murder is affirmed.

*So ordered.*