Michael HOILETT Petitioner,

v.

Peter ALLEN, et. al.   Respondents.

No. CIV.A. 03–12619–RCL.

United States District Court,
D. Massachusetts.

March 31, 2005.

Annette C. Benedetto, Department of Attorney General, Boston, MA, for Peter Allen, Respondents.

## MEMORANDUM ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

LINDSAY, District Judge.

### Introduction and Background Facts

Before this court is a petition by Michael Hoilett (the "petitioner" or "Hoilett") for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Hoilett contends that he is entitled to habeas corpus on two grounds: first, because his appellate counsel provided ineffective assistance of counsel by failing to appeal the lower court's denial of Hoilett's motion for the medical records of a key witness; and, second, because the trial judge applied the wrong standard in improperly denying access to these records. The Commonwealth of Massachusetts ("Commonwealth") has moved to dismiss the petition on the basis that Hoilett's claims are procedurally defaulted. For reasons stated below, the court denies Hoilett's petition and grants the Commonwealth motion to dismiss.

On October 21, 1994, a jury convicted Hoilett of first-degree murder for the killing of a liquor store owner during the course of a robbery. The conviction was unanimously affirmed by the Massachusetts Supreme Judicial Court ("SJC") in *Commonwealth v. Hoilett,* 430 Mass. 369, 370–373, 719 N.E.2d 488 (1999).

At petitioner's trial, the defense did not present any of its own witnesses or evidence and instead .decided to impeach the

testimony of the prosecution's witnesses. One such witness was Anngolia Cartwright, a friend of the petitioner who testified that Hoilett ran into her apartment shortly after the approximate time of the murder and said "f-king spic" and "I hope he dies." She also testified that he appeared "nervous" and had a green mask and that his hand was bleeding. Ms. Cartwright's roommate, Viambi Bush, also testified that Hoilett was carrying a green mask and appeared nervous.

On September 22, 1994, the defendant filed a pre-trial motion for discovery of psychiatric, medical, and social service records[1] of Ms. Cartwright held by two residential programs and the Commonwealth's Department of Social Services ("DSS"). As a basis for his request, the petitioner cited Ms. Cartwright's recent suicide attempt and residence at a had shelter operated by DSS. Five days later, on September 27, 1994, Judge Quinlan of the Massachusetts Superior Court conducted a hearing pursuant to *Commonwealth v. Bishop*, 416 Mass. 169, 617 N.E.2d 990, governing defendants' access to otherwise privileged records of a potential witness. She subsequently denied the petitioner's request as to the records from the residential programs, and left consideration of the DSS records to the trial judge, because he had not shown any relevancy. Judge Quinlan expressed hesitation about expanding *Bishop* beyond sexual assault cases. She finally added that petitioner would have an opportunity to test the Ms. Cartwright's memory at trial.

A single justice of the Supreme Judicial Court affirmed, without a written opinion, Judge Quinlan's decision on appeal after the petitioner filed a motion under Mass. Gen. Laws, Ch. 211, § 3.[2] At the end of the fourth day of trial, after cross-examining Ms. Cartwright, Hoilett's trial counsel renewed his request to review her records held by DSS the halfway house where she lived. The trial judge denied Hoilett's request and stated that he had reviewed them and found "nothing in there that's exculpatory to the defendant."

Hoilett appealed his conviction to the Supreme Judicial Court on six grounds: (1) in the denial of his motion for a mistrial after the Commonwealth's opening; (2) in the erroneous admission of photographs; (3) in the denial of his motion for a mistrial based on the prosecutor's conduct during trial; (4) in the prosecutor's closing argument; (5) in the instructions on the presumption of innocence, on the third prong of malice, and (6) in the failure to give a missing witness instruction.

*Commonwealth v. Hoilett*, 430 Mass. 369, 719 N.E.2d 488, 490 (1999).[3] Hoilett's appellate counsel, who was different from his trial counsel, did not raise the issue of the defense's access to Cartwright's medical records.[4] On November 16, 1999, the SJC

---

1. I refer to these records collectively as "medical records" throughout the course of this opinion.

2. Mass. Gen. Laws, 211, § 3 states in pertinent part: "[t]he supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and processes to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws."

3. The appellate brief purports to present nine separate questions to the SJC. However, because the SJC consolidated some of the analytically similar claims, there are actually only six appellate issues.

4. Both Hoilett's trial attorney, John Salsberg, and his appellate counsel, James A. Coutre, were appointed by the Committee Public

affirmed Hoilett's murder conviction and overturned his armed robbery conviction as duplicative. *Id.* at 494.

On October 6, 2000, Hoilett, proceeding *pro se,* filed a motion for new trial in the Suffolk Superior Court. Hoilett argued in his new trial motion that he received ineffective assistance of appellate counsel because his appellate counsel failed to raise the lower courts' denial of his effort to review Ms. Cartwright's medical records. The motion judge denied his motion by noting that Hoilett "has waived all of these claims by his previous appeal."

Undismayed, Hoilett next sought leave to appeal from a single gatekeeper justice of the SJC.[5] Hoilett urged the single justice to grant him a new trial because his claim for ineffective assistance of appellate counsel claim can never be waived because he never had any opportunity to raise the issue. On October 9, 2003, Justice Ireland, the single justice hearing the appeal, denied Hoilett's motion.[6] The petitioner, proceeding *pro se,* commenced this habeas action on December 30, 2003.

## Discussion

### I. *Ineffective Assistance of Counsel* [7]

Hoilett's first claim for habeas relief is on the ground that his counsel on direct appeal was ineffective in failing to appeal the trial court's denial of access to Cartwright's medical records. He claims that the inclusion of this issue would have made reversal of his conviction more likely. Respondents press the point that Hoilett's

claim is procedurally barred because the state court's denial of his claim was based on an adequate and independent state ground.

■ As a general rule, "[a] finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless that defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney,* 291 F.3d 74, 78 (1st Cir.2002)(*citing Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). In this case, the motion judge denied Hoilett's motion for a new trial because he did not raise them on "previous appeals" and then a single justice denied his subsequent gatekeeper motion for leave to appeal the denial of his motion. Hoilett insists, however, that because his motion for new trial was his first opportunity to attack the performance of his appellate counsel, he could not have waived this claim. *See Commonwealth v. Lowe,* 405 Mass. 1104, 1105, 540 N.E.2d 1308 (1989)(observing that a defendant cannot assert, in a motion for a new trial, claims of error he could have raised, but did not raise, at trial or appeal). Under the teaching of *Lowe* and related cases, Hoilett's claim, at first blush, appears persuasive because he never had an opportunity to fault his appellate counsel's per-

---

Counsel Services. Although both Coutre and Salsberg work for CPCS, there is no conflict of interest here because Hoilett is not claiming ineffective assistance by his trial counsel, only his appellate counsel.

5. Under Mass. Gen. Laws ch. 278, § 33E, defendants in capital cases can file a motion for leave to appeal an order denying a request for a new trial. This motion is presented to a single justice of the SJC who decides whether

it presents a "new and substantial question which ought to be determined by the full court." Mass. Gen. Laws ch. 278, § 33E.

6. Justice Ireland simply wrote "it is ORDERED that the leave to appeal is DENIED."

7. Hoilett has fully exhausted this claim and it is properly before this court.

formance until his first motion for new trial.[8]

■ The court does not have to reach the question of whether petitioner's ineffective assistance of appellate counsel claim is procedurally barred because even assuming, *arguendo*, that there is no procedural bar here, the substance of this claim is not meritorious. This case is strikingly similar to the First Circuit's recent decision in *Thompson v. Spencer*, 111 Fed.Appx. 11, 2004 WL 1949074 (1st Cir. 2004).[9] In that case,[10] the petitioner also argued that his claim of ineffective assistance of appellate counsel was not procedurally defaulted because "they could not have been raised before the appeals was decided." *Thompson*, at 12, 2004 WL 1949074 at *1. Rather than examine whether petitioner's claim was procedurally barred, the First Circuit instead decided to dismiss the case on the ground that petitioner's claim failed on the merits. This court will adopt and apply *Thompson's* framework in evaluating Hoilett's ineffective assistance claim.

■ As an initial point, the *Thompson* court noted that "[b]ecause the state courts did not address the merits of [defendant's] ineffective assistance of appellate counsel claim, habeas review of those claims is *de novo*." *See Thompson*, at 12, 2004 WL 1949074 at *1 (*citing Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003) and *Ellsworth v. Warden*, 333 F.3d 1, 3 (1st Cir.2003)). Similarly, the court will conduct a *de novo* review of plaintiff's claim in this case because the motion judge dismissed petitioner's motion for a new trial on procedural grounds and never reached the merits.

■ A defendant has a Sixth Amendment right to the effective assistance of counsel on his direct appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.E.2d 821 (1985) ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney"). When raising a claim of ineffective assistance of appellate counsel, a habeas petitioner must first show that his counsel's

8. In fact, Respondent has not cited, and this court has not found, any case where a Massachusetts court denied, on waiver grounds, an ineffective assistance of appellate counsel claim raised in a defendant's first post-conviction motion.

9. The First Circuit has designated this case as an unpublished decision, and therefore it may not be cited as precedent. *See* First Circuit Local Rule 32.3(a)(2). However, a litigant or court may cite to an unpublished opinion if it addresses a "material issue" on appeal that is not been addressed in any published opinions. *Id.* If an unpublished opinion satisfies this requirement, then the First Circuit will consider these opinions persuasive, but not precedential. *Id.*

Courts in this district have found that unpublished First Circuit opinions, at a minimum, represent "persuasive authority on the district courts." *Alshrafi v. American Air-*

*lines, Inc.*, 321 F.Supp.2d 150, 159–160, n. 9–10 (D.Mass.2004). Although it has no precedential value, the court will rely on *Thompson* because the arguments; the issues in that case closely mirror those in this case, it provides some insight into how the First Circuit might approach this issue; and no other First Circuit opinion has addressed this issue.

10. It is of no moment that *Thompson* was a case addressing the issuance of certificate of appealability under 28 U.S.C. § 2253(c)(2), while this case is a petition for habeas corpus under 28 U.S.C. § 2254. *Thompson* is applicable to this case because it indicates that a district court can deny a habeas petition, despite questions about the applicability of a procedural bar, when it is clear that the claim fails on the merits. This approach is consistent with the view that a may deny a habeas petition on the merits, notwithstanding a petitioner's failure to exhaust in state courts. *See* 28 U.S.C. § 2254(b)(2).

decision not to raise certain issues on appeal was objectively unreasonable. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Then, he has to show a reasonable probability that, but for his counsel's unreasonable failure to raise these issues, he would have prevailed in his appeal. *Id.* at 286, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756; see also *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)(observing that "[t]he benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

The Court in *Smith* explained that a claim of ineffective assistance of appellate counsel is particularly daunting because "appellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288, 120 S.Ct. 746, 145 L.Ed.2d 756. Thus, "it is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* (citing *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986)("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel will be overcome")).

■ The sole question concerning the performance of Hoilett's appellate counsel before the court is his decision not to appeal the lower court's decision denying Hoilett access to Wright's medical records. Here, Hoilett cannot show that it was un-

reasonable for his lawyer not to raise this issue on appeal for several reasons. First, this is not a case where Hoilett's appellate counsel raised frivolous claims on appeal. Counsel submitted a thorough thirty-seven page brief to the SJC, containing six separate claims of errors, ranging from attacks on the Commonwealth's closing and opening arguments, jury instructions, and the admission of gruesome photographs of the victim. *Hoilett,* 430 Mass. at 370, 719 N.E.2d 488. Although the SJC did not order a new trail, it did agree with appellate counsel that defendant's conviction of felony murder merged with his conviction of armed robbery while masked and vacated the latter conviction. *Id.* at 376, 719 N.E.2d 488. It also reiterated its concern that trial judges should be careful in admitting potentially inflammatory evidence, though it found that, in this case, the evidence did not undermine the fairness of the trial. *Id.* at 373, 719 N.E.2d 488. Even though the attorney's other arguments ultimately failed, the court, examining them from "counsel's perspective at the time," not under "the distorting effects of hindsight," will not blame him for advancing arguments that he believed had strong merit. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

In addition, it cannot be said that the omitted claim was "clearly stronger than issues that counsel did present." *Smith,* 528 U.S. at 288, 120 S.Ct. 746, 145 L.Ed.2d 756. First, counsel might have concluded that Cartwright's records, to the extent they were relevant, were only useful for impeaching her testimony.[11] Given that trial counsel conducted a far-reaching cross-examination of Cartwright, including

---

11. The trial judge's emphatic denial of defendant's motion for Cartwright's psychiatric records might have also signaled to appellate counsel that he had very little chance of success on appeal. The trial judge stated that Cartwright was "poised, attentive, assertive

and completely responsive to all direct and indirect inquiries" and that a review of records demonstrated no evidence of psychiatric problems. Trans., Vol. 4, p. 7. It is difficult to see how an appellate court can disregard the trial court's finding that defendant's allega-

an extensive inquiry regarding the extent of her memory on the day in question, appellate counsel, as a matter of strategy, might have preferred to focus on other issues. In addition, it is not evident that counsel should have advanced this argument since the SJC had rejected this very claim during pre-trial proceedings when a single justice denied his appeal, pursuant to Mass. Gen. Laws, Ch. 211, § 3, of Judge Quinlan's decision. It is difficult to criticize counsel for this omission when this process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail ... is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)(internal quotations and citations omitted). In sum, while the better course in this case may have been for appellate counsel to appeal this issue, the court does not find that his failure to do so amounts to ineffective assistance of counsel.

■ Even if Hoilett demonstrates that his counsel rendered deficient performance, he cannot show that he suffered prejudice as a result of his counsel's performance. To demonstrate prejudice, Hoilett has to show that, but for his counsel's unreasonable failure to raise this issue, there is a reasonable probability that the SJC would have reversed his conviction or granted him a new trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* It is insufficient for Hoilett to show that the errors had "some conceivable effect on the outcome." *Id.* at 693, 104 S.Ct. 2052. Yet, he does not have to show that the errors were more likely than not to have affected the outcome. *Id.* Because defendant was represented by appellate counsel, the court presumes that the appellate proceedings were reliable and place the burden on Hoilett to defeat this presumption. *Smith v. Robbins,* 528 U.S. at 287, 120 S.Ct. 746, 145 L.Ed.2d 756.

After a careful review of the trial record, the court finds that Hoilett has not satisfied his burden of showing that he was prejudiced by his appellate counsel's performance. On this record, Hoilett has not shown that the SJC would, at a minimum, have ordered a new trial. As explained above, the SJC had already heard, and rejected, this argument when Hoilett appealed it before his conviction. In addition, even if Hoilett's counsel had broached this topic on appeal, the record indicates that the SJC would have found that the records had limited impeachment value because Cartwright's testimony was corroborated by other witnesses.

Cartwright testified that when she saw Hoilett at around the time of the shooting, he looked "nervous" and was "pacing the floor back and forth" and repeating "f* * * * *n spick" and "I hope he dies." Trans. Vol. 3, pp. 176–177. He was wearing a green mask, a light green hooded sweatshirt, blue jeans and boots and was bleeding from his hand. *Id.* at pp. 178–180.

Bush corroborated significant parts of Cartwright's testimony. Like Cartwright, she testified that when she first saw Hoilett that day he was "shooken up," "jumpy," "nervous" and "shocked" *Id.* at pp. 62 –63, 75. She also explained that he was carrying a green mask and kept repeating that "I shouldn't did that" and "He should have given me the money." *Id.* at pp. 64–65. She described that he "was just walking, like pacing the floor." *Id.* at p. 75. Finally, she conceded that she bandaged his bleeding hand. *Id.* at p. 77. Thus, for the SJC to have ordered a new trial, it would have had to find that Cartwright's psychiatric records impeached her testimo-

tions that she has serious psychiatric prob-

lems was "pure speculation." *Id.* at p. 8.

ny to an extent that a jury would have ignored the corroborating testimony presented by Bush.[12]

Finally, Mass. Gen. Laws Chap. 278, § 33E, by its terms, gives the SJC the power to undertake a full and complete review of the entire record to determine if there has been a miscarriage of justice. Under that statute, the SJC examines "whether there was an error ... (by all counsel and trial judge) and if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth v. Britto*, 433 Mass. 596, 601, 744 N.E.2d 1089 (2001) (citations omitted). The SJC does not take its duty under 33E lightly, as evidenced by cases where the SJC has exercised its power under 33E to reach issues that appellate counsel failed to raise on appeal. *See Commonwealth v. Gunter*, 427 Mass. 259, 260–261, 692 N.E.2d 515 (1998)(where the SJC, pursuant to its powers under Chapter 278, § 33E, considered an issue during direct review of defendant's case that neither trial or appellate counsel had raised).

In addition, the SJC has recently stated that "[t]he defendant's claim that he was deprived of the effective assistance of appellate counsel on his direct appeal ignores ... the nature of plenary review." *Commonwealth v. Scott*, 437 Mass. 1008, 1008, 770 N.E.2d 474 (2002)(citing Chap. 278, § 33E). Given that the SJC failed to detect any error that amounted to a miscarriage of justice during direct review of

Hoilett's conviction, it suggests that it would not have ordered a new trial if Hoilett's appellate counsel had presented this claim to them. Consequently, Hoilett has failed to demonstrate that he was prejudiced by his counsel's omission of this claim.

## II. Denial of Exculpatory Medical Records

Petitioner also moves for habeas relief on the additional ground that the trial court should have provided him access to Cartwright's medical records. He maintains that these records contain valuable exculpatory evidence and prevented him from impeaching her testimony.[13] The Commonwealth, by a way of a motion to dismiss, contends that this claim is procedurally defaulted because it is based on an adequate and independent state ground.

■ As a general rule, "[a] finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless that defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney*, 291 F.3d 74, 78 (1st Cir.2002)(*citing Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). In this case, Hoilett's motion for a new trial was denied on waiver grounds and a single justice denied

---

**12.** Moreover, even to the extent Hoilett argues that Cartwright's testimony was significant in that it bolstered Bush's testimony, the court notes that witnesses at the scene of the crime corroborated both of their testimony regarding the clothes the suspect wore. *See, e.g.*, Trans., Vol. 2, pp. 115–116 (Testimony of John Amado)(describing the robber at the store as a black man in his 20s wearing a green mask, blue jeans, a hooded sweater, and a dark jacket). *Id.* at p. 166 (Testimony of Sandor Clark)(explaining that the robber had a green mask and a hood). In addition,

another witness testified that she saw a man with a mask and a shotgun in the sleeve of his jacket running out of the store and into Cartwright and Bush's apartment. *Id.*, Vol. 3, pp. 26—27.

**13.** Although he never states it explicitly, petitioner may be claiming that the federal right being infringed here appears to be his right to confront witness against him as guaranteed by the Sixth Amendment.

his gatekeeper motion for leave to appeal the denial of his motion. Hoilett could have raised the issue of the denial of Cartwright's records on direct appeal, but never did. This failure to raise this issue procedurally bars his claim.

Of course, Hoilett's failure to raise this issue on his direct appeal does not constitute an adequate and independent state ground if the SJC did not regularly and consistently enforce this procedural bar. *Gunter*, 291 F.3d at 79 (*citing Johnson v. Mississippi*, 486 U.S. 578, 588–89, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) and *Harris v. Reed*, 489 U.S. 255, 262–63, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). There is no question, however, that the SJC does enforce the rule that a claim not raised is waived. *Id.* (*citing, e.g., Commonwealth v. Fernandes*, 430 Mass. 517, 722 N.E.2d 406, 409 n. 13 (1999)). Consequently, this rule is firmly established.[14]

■ In addition, it also clear here that the last decision by the state court, in this case the miscarriage of justice review, did not rest on federal law. It is well-settled that "[i]f the last state court to review a petitioner's case reaches the merits of a federal claim presented to it, any bar to federal court review is lifted." *Id.* at 80 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) and *Doucette v. Vose*, 842 F.2d 538, 539–540 (1st Cir.1988)). The last state court decision in this case is a terse, unexplained order by the single justice stating: "it is ORDERED that the leave to appeal is DENIED." When confronted with unexplained orders, the First Circuit has directed district courts to "look[ ] through to the last reasoned decision" by the state court. *Id.* This decision, by the motion judge, states "defendant has waived all of these claims by his previous appeal." As a result, the decision by the motion judge

clearly rested on a state procedural default.

Even after concluding that a habeas petitioner's claim is foreclosed by a procedural default, the court still has to determine "whether petitioner has shown that there was cause for the default and actual prejudice, or that there was a fundamental miscarriage of justice." *Id.* (*citing Coleman*, 501 U.S. at 750, 111 S.Ct. 2546, 115 L.Ed.2d 640). To demonstrate "cause" for a procedural default, petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* He can also demonstrate cause by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment. *Id.*

■ Hoilett does not even attempt to show cause for his procedural default. Moreover, given the court's finding that appellant counsel's failure to raise this issue on appeal did not constitute ineffective assistance of counsel, Hoilett cannot use that as a "cause" for his default. In sum, Hoilett has not established any "cause" for his failure to raise this claim during his direct appeal.

■ Finally, Hoilett has also fallen short of demonstrating that there is a fundamental miscarriage of justice. To show a fundamental miscarriage of justice, Hoilett "must establish his actual innocence." *Simpson v. Matesanz*, 175 F.3d 200, 210 (1st Cir.1999). That is, "petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Gunter*, 291 F.3d at 83 (*quoting Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). There is no realistic argument here that Hoilett is actually innocent of the crimes of which he has been

14. The SJC's review of a sentence under section 33E does not does not negate the state's contemporaneous objection rule. *Gunter*, 291 F.3d at 79–80 (citing cases).

convicted. As indicated above, there is overwhelming eyewitness evidence tying him to the crime scene and he has injuries on his legs consistent with the injuries the assailant suffered at the store during the murder.[15]

### Conclusion

For the foregoing reasons, Michael Hoilett's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the petition is dismissed. In addition, the court will not issue a certificate of appealability shall because Hoilett has failed to make a substantial showing of a denial of a constitutional right.

**15.** This claim also fails for the separate and independent reason that it has not been exhausted. In his supplemental memorandum and record appendix in support of amended motion for leave to appeal from denial of motion for new trial, Hoilett cited two grounds for his motion: a) the motion judge improperly ruled that his claims were waived; and b) he received ineffective assistance of counsel. He did not argue that the trial judge improperly denied him access to Wright's records. As a result, he never exhausted this claim. See 28 U.S.C. § 2254(b)(1)(A)(stating that a habeas petition "shall not be granted *unless* the applicant has exhausted the remedies available in the courts of the State").