NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-216

COMMONWEALTH

vs.

CESAR VALENTIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant was convicted of assault and battery, G. L. c. 265, § 13A (a); assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b); and disturbing a correctional institution, G. L. c. 268, § 30; in connection with a jailhouse assault.  On appeal, the defendant raises two issues.  He argues that the judge should have given a missing witness instruction because the Commonwealth did not call the victim as a witness.  Second, he argues that trial counsel was ineffective for failing to object to the admission of a video recording that captured the assault on the ground that it was improperly authenticated.  We affirm.

Background.  The defendant and the victim were detainees at a jail.  A surveillance video recording (video) of the jail's common area, which was admitted in evidence at trial, showed the victim talking on a pay phone.  As soon as a sheriff's deputy climbed a stairway leading away from the common area, the defendant approached the victim from behind and punched him in the head.  The defendant proceeded to repeatedly punch the victim in the head as he wrestled the victim to the ground.  Upon hearing the victim scream, the deputy radioed for help and ran back down the stairs.  Pursuant to protocol, the deputy waited for backup to arrive before intervening.  The defendant continued to kick and punch the victim -- even throwing a metal bookcase onto him -- until deputies stormed into the common area and subdued the defendant.  The deputy who climbed the stairs witnessed the melee.  At trial, he testified, "I saw the defendant punching the detainee on the phone, continuously. . . . he was bleeding.  He was on the ground, he was being punched, kicked."

The Commonwealth laid a foundation for the surveillance video through the deputy.  After viewing a "short clip" of the video, the deputy identified himself in the video and testified that he agreed with the prosecutor that the video was a "fair and accurate representation of what was going on" in the jail's common area on the date in question.  The judge admitted the

2

video in evidence and trial counsel did not object.  After examining one other deputy who responded to the fight, the Commonwealth rested.  The defendant presented his case solely through cross-examination; he did not call any witnesses.  In a pretrial motion in limine, the defendant argued that the judge should instruct the jury that they could construe the absence of an expected witness, namely the victim, against the Commonwealth.  During the charge conference, the defendant renewed his pretrial motion for a missing witness instruction, which the judge denied.

Discussion.  1.  Missing witness instruction.  The defendant argues that the judge erred by denying the defendant's request for a missing witness instruction.  We review the judge's decision for abuse of discretion and will not reverse unless the decision was "manifestly unreasonable." Commonwealth v. Saletino, 449 Mass. 657, 667 (2007).

"[W]hen a party 'has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case,' and the party, without explanation, fails to call the person as a witness," a missing witness instruction may be appropriate.  Id. at 667-668, quoting Commonwealth v. Anderson, 411 Mass. 279, 280 n.1 (1991).  A missing witness instruction permits the jury to

"infer that the [missing witness], had he been called, would have given testimony unfavorable to the party" that failed to call him.  Saletino, supra at 668, quoting Anderson, supra.  A judge may give the instruction only when the moving party meets certain "foundational requisites."  Saletino, supra at 669; see Mass. G. Evid. § 1111(b) (2024).  Those foundational requisites include the importance of the missing witness's testimony, the physical availability of the witness, whether the evidence could be produced from other sources, and whether the witness is equally available to either party.  Commonwealth v. Williams, 450 Mass. 894, 900 (2008).  In addition, courts may consider whether the party has a plausible reason for not calling the witness.  Anderson, supra at 282-283.

Because an adverse inference can be severely damaging, the judge retains discretion to refuse to give a missing witness instruction even when the foundational requirements are met. See Anderson, 411 Mass. at 283 ("the trial judge has discretion to refuse to give the [missing witness] instruction . . . and, conversely, a party who wishes the instruction cannot require it of right").  See also Williams, 450 Mass. at 900-901, quoting Commonwealth v. Schatvet, 23 Mass. App. Ct. 130, 134 (1986) ("[b]ecause the inference, when it is made, can have a seriously adverse effect on the noncalling party -- suggesting, as it does, that the party has willfully attempted to withhold or

4

conceal significant evidence -- it should be invited only in clear cases, and with caution").

The judge acted within his discretion in refusing to give the instruction because the defendant failed to meet the foundational requisites. The defendant made no showing that the Commonwealth was in a better position to call the victim as a witness. See Commonwealth v. Hoilett, 430 Mass. 369, 376 (1999) (missing witness instruction not proper where witness was equally available to both parties). The victim was equally available to both parties -- he was believed to be incarcerated at the time of the trial. See Commonwealth v. Johnson, 39 Mass. App. Ct. 410, 412 (1995) (no showing that jailed witness's presence at trial could not have been secured by either party). Trial counsel could have subpoenaed the victim to testify but did not do so.

Although there was no preliminary showing that the witness would be hostile to the Commonwealth, "[l]ogic would dictate that, because of his status, and the Commonwealth's role in prosecuting him, [the witness] would be naturally antagonistic toward the Commonwealth's interests." Anderson, 411 Mass. at 283. The Commonwealth had a strong case without the victim's testimony, which would have been, at best, cumulative. Schatvet, 23 Mass. App. Ct. at 134 (no basis for missing witness instruction where testimony would have been cumulative). The

video, along with the deputy's testimony, was sufficient to allow the jury to find the elements of all three offenses. The Commonwealth made a reasonable tactical decision that relying on a video of the attack, rather than a potentially hostile witness, would be a simpler and more effective means of proving its case. See Saletino, 449 Mass. at 668 ("[s]uch an instruction should not be given where the Commonwealth has legitimate tactical reasons for not calling the witness").

The Commonwealth had no burden to prove motive, and no obligation to peremptorily rebut a self-defense claim that was never raised. The defendant nevertheless characterizes the Commonwealth's failure to assist in raising a self-defense claim as an attempt to sidestep exculpatory evidence. In fact, this gave the Commonwealth a "legitimate tactical reason" for not calling the victim. Saletino, 449 Mass. at 668. If the defendant had wished to assert self-defense, he could have called the victim as a witness. Where, as here, "the circumstances, considered by ordinary logic and experience, suggest a plausible reason" for not calling the witness, the missing witness instruction should not be given. Anderson, 411 Mass. at 282-283. The judge did not abuse his discretion.[1]

---

[1] The defendant also argues that the judge erred in not allowing him to make an argument in closing related to the alleged missing witness. Given the defendant's failure to show he was entitled to the instruction, he has also failed to show

6

2.  Authentication of the video recording.  The defendant

contends that trial counsel was ineffective for failing to

object to the admission of the video for lack of authentication.

We disagree with this contention because the video was properly

authenticated.  The deputy testified to his firsthand

observation of the assault, which was consistent with what was

depicted on the video.

The heart of the defendant's argument is that while the

deputy's testimony was sufficient to authenticate the "short

clip" of the video that was played in court, it was insufficient

to authenticate the video in its entirety.  The deputy

identified himself in a still frame in the video, watched a

"short clip" of himself climbing the stairs, and testified that

the recording was "a fair and accurate representation of what

was going on."[2]  The defendant emphasizes that the deputy did not

---

he was entitled to make such an argument.  See Saletino, 449
Mass. at 670 ("once it was determined that the judge would not
give a missing witness instruction in this case, he should not
have permitted counsel to make the missing witness argument to
the jury").

[2] The record is silent on exactly what the "short clip" of
the video depicts.  The prosecutor asked the deputy the
following question: "So Deputy, just to play a short clip of it,
you mentioned that is you in the uniform, beginning to go up the
stairs?"  About ten seconds elapsed from when the deputy began
to climb the stairs to when the defendant first punched the
victim.  For reasons outlined below, whether the "short clip"
showed the fight itself is immaterial to the outcome of the
defendant's ineffective assistance of counsel claim.

testify that he had watched the entire video.  Trial counsel did not object to the admission of the video.

To prevail on a claim of ineffective assistance of counsel, the defendant must show a "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defen[s]e."  Commonwealth v. Saferian, 366 Mass. 89, 96-97 (1974).

The defendant does not satisfy the first prong of the Saferian test because objecting to the admission of the video would have been futile.  See Commonwealth v. Collins, 470 Mass. 255, 261 (2014) (counsel not ineffective for failing to make futile objection).  To authenticate an item of evidence, the proponent must produce evidence to support a finding that the item is what its proponent represents it to be.  Commonwealth v. LaCorte, 373 Mass. 700, 704 (1977).  A video may be authenticated with eyewitness testimony that the video is a fair and accurate representation of what the witness perceived.  See Commonwealth v. Pytou Heang, 458 Mass. 827, 855 (2011) (testimony by witness that she and three other individuals could be seen on surveillance video and that video was fair and accurate depiction of scene was sufficient to authenticate

8

video); Commonwealth v. Connolly, 91 Mass. App. Ct. 580, 586 (2017) (authentication of video typically achieved by "having an eyewitness testify that the video is a fair and accurate representation of what he saw on the day in question").  A video may also be authenticated by circumstantial evidence, including its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics."  Commonwealth v. Davis, 487 Mass. 448, 466 (2021), quoting Commonwealth v. Siny Van Tran, 460 Mass. 535, 546 (2011).

The deputy identified himself in the video and agreed with the prosecutor that the video was "a fair and accurate representation of what was going on" at the jail on the night in question.  This testimony supported a finding that the video was authentic.  Pytou Heang, 458 Mass. at 855-856.  The defendant cites no case law that requires the witness to watch the entire video in court, or prior to testifying, to authenticate it, nor does case law require a witness to continually authenticate a video "frame by frame" as it is played.

Assuming arguendo that this testimony was insufficient to authenticate the video, the remainder of the deputy's testimony authenticated the video by circumstantial evidence.  The deputy testified, "I saw the defendant punching the [victim] on the phone, continuously. . . . he was bleeding.  He was on the ground, he was being punched, kicked.  And then there was a

9

bookcase, like a metal bookcase that was right near there, and that was picked up by [the defendant] and thrown on [the victim]."  This testimony matches what is shown on the video. See Davis, 487 Mass. at 466 ("plentiful circumstantial evidence" authenticated video where witness testimony matched substance of what was shown on video).  The defendant's ineffective assistance of counsel claim falls short.

Judgments affirmed.

By the Court (Vuono, Singh & Hershfang, JJ.[3]),

*Paul Little*

Clerk

Entered:  March 4, 2025.

---

[3] The panelists are listed in order of seniority.